*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BETTY J. WAGNER, also known as BETTY J.
KEATHLEY,

      Plaintiff-Appellant,

v

COLLIN A. WAGNER,

      Defendant-Appellee.

UNPUBLISHED
December 19, 2024
12:11 PM

No. 371296
Clare Circuit Court
Family Division
LC No. 2021-900065-DM

Before: BORRELLO, P.J., and MALDONADO and WALLACE, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting the parties joint legal custody and granting defendant sole physical custody of their minor children, BEW and CAW. We affirm.

## I. FACTUAL BACKGROUND

More than a year after his divorce from plaintiff, defendant moved for a change of custody and parenting time, noting that he was concerned about plaintiff's stability and the children's emotional wellbeing while in plaintiff's care. Plaintiff's erratic behavior was demonstrated by an incident at the children's school in March 2023. BEW has autism spectrum disorder (ASD) and this sometimes causes intense emotional outbursts involving severe tantrums and aggressive behavior. There was also evidence that BEW exhibited strong emotional or self-harming behaviors in plaintiff's home. For example, a community mental health (CMH) care manager described seeing BEW hit his head against a cabinet when he was upset. Plaintiff's mother also described seeing BEW hit his head on the floor, bite himself, and bite others.

Critical to this case was an incident in which BEW became physically aggressive at school, and school staff called plaintiff to come and take BEW home. Plaintiff and her boyfriend, Jonathan Keathley, came to the school but refused to take BEW home. Instead, plaintiff insisted on entering the building to speak to the child's teacher immediately. The principal refused and told plaintiff to schedule an appointment instead. A school employee did not realize that the principal denied plaintiff and Keathley entry and accidentally opened the door. Keathley attempted to enter the office with the plaintiff, but the school employee told him that he could not come in. Keathley put

his foot in the office door so the school employee could not close it, then plaintiff "charged back to the door, slung her arm through [the employee's], and shoved her" to allow Keathley to enter. Plaintiff grabbed BEW and began walking toward his classroom, but the principal held her hands up to mother and reminded her that she could not enter. Plaintiff ignored the principal's request to leave and continued shouting profanities as she headed toward the classroom. The principal then had to put the school in lockdown and call the police. Keathley then spanked BEW in the school's vestibule while the child screamed and cried. Plaintiff was then arrested and initially resisted the officer's efforts to detain her. During her arrest, plaintiff made comments blaming BEW for the incident.

Plaintiff's concerning behavior was also evident from threatening text messages and voicemails that she left for defendant's mother, which included derogatory comments about defendant. Defendant testified that he was concerned about the children's well-being in plaintiff's care because the children frequently had injuries and reported that plaintiff and Keathley, whom plaintiff married while this case was ongoing, hit the children to discipline them. Although plaintiff denied being physically violent with the children or abusing them, she admitted that she and her husband occasionally spanked them. Further, plaintiff's mother testified that she and her husband sometimes spanked the children. Both plaintiff and defendant have a history of investigations by Children's Protective Services (CPS), and plaintiff and her husband had several complaints about possible physical abuse brought by mandatory reporters in the children's lives. The children's principal, special education teacher, urgent care physician, and primary care physician all testified that they reported their concerns about the children's injuries and plaintiff's parenting to CPS. CPS never substantiated any allegations of abuse made against either party.

The trial court found that there had been a change in circumstances that required it to review the parties' current custody and parenting-time order, noting plaintiff's arrest at the children's school, plaintiff's conduct at the school, plaintiff's messages to defendant's mother, and the various instances of suspected harm while the children were in plaintiff's care. Because the court found that an established custodial environment existed with both parties, it applied the clear-and-convincing standard to defendant's motion. After considering each of the best-interest factors, the trial court ordered that defendant would have sole physical custody of the children while the parties continued to share legal custody.

## II. STANDARDS OF REVIEW

MCL 722.28 provides that when reviewing a lower court order in a custody dispute, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." This statute "distinguishes among three types of findings and assigns standards of review to each." *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011) (quotation marks and citation omitted). Factual findings "are reviewed under the 'great weight of the evidence' standard." *Id*. "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). Whether there is an established custodial environment is a question of fact and is therefore reviewed under this standard. *Id*. It is the responsibility of the trial court, not this Court, to assess credibility of witnesses and weigh the evidence. *Luna v Regnier*, 326 Mich App 173, 182-183; 930 NW2d 410 (2018). "Questions of

law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id.* (quotation marks and citation omitted). "Discretionary rulings, such as to whom custody is awarded, are reviewed for an abuse of discretion. An abuse of discretion exists when the trial court's decision is palpably and grossly violative of fact and logic." *Dailey*, 291 Mich App at 664-665 (quotation marks, citations, and alteration omitted).

## III. DISCUSSION

Plaintiff argues that the trial court's best-interest findings were against the great weight of the evidence.[1] We disagree.

"A trial court must consider the factors outlined in MCL 722.23 in determining a custody arrangement in the best interests of the children involved." *Bofysil v Bofysil*, 332 Mich App 232, 244; 956 NW2d 544 (2020). MCL 722.23 provides:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

---

[1] Plaintiff does not dispute the court's findings that there was proper cause or change of circumstances such that reviewing the custody order was warranted.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

In her principal brief on appeal, plaintiff only challenges the court's finding that factor (c) favors defendant. The thrust of plaintiff's argument is that she had been primarily responsible for managing BEW's medical needs whereas defendant had been uninvolved, that the court's decision disrupted BEW's medical care, and that the court overemphasized the March 2023 incident at BEW's school as well as her practice of spanking the children. The record supports the trial court's finding that this factor favored defendant. Despite plaintiff's efforts to downplay the March 2023 incident,[2] plaintiff's alarming behavior that day was properly considered with respect to several factors. Plaintiff trespassed in an elementary school, assaulted a school employee, made a profanity-laced scene in BEW's presence, allowed her then-boyfriend to spank BEW in the school's vestibule, and then resisted arrest. Given that a behavioral analyst from Autism of America testified that BEW's outbursts were often triggered when BEW felt like he lacked control over situations, this incident was strong evidence that plaintiff lacks the disposition to manage BEW's ASD. Further, not only did plaintiff regularly spank the children, she also allowed her husband and her parents to spank them. Given that the behavioral analyst also testified that spanking BEW was contrary to his welfare, this predisposition to corporal punishment likewise suggests that plaintiff lacks the disposition to manage BEW's ASD. There was also evidence that plaintiff attempted to get a feeding tube for BEW despite him having no trouble with eating at defendant's house. Moreover, there was evidence that plaintiff repeatedly tried to have BEW diagnosed with diabetes despite him never having issues with his blood sugar. In sum, the court's finding that factor (c) favored defendant was not against the great weight of the evidence.

As noted, plaintiff only addressed factor (c) in her principal brief. However, defendant also addressed factors (b), (d), (f), (h), (j), and (k), and plaintiff rebuts defendant's arguments regarding (d) and (j) in her reply brief. Accordingly, we also note that the court's findings regarding those two factors likewise were not against the great weight of the evidence. Regarding factor (d), plaintiff criticizes court's emphasis on the size and tidiness of defendant's home. However, she does not actually challenge the trial court's findings, which include a discussion of the parties' presence in their respective communities and defendant's proximity to the children's aunt and grandparents. Regarding factor (j), plaintiff criticizes the trial court for only considering

---

[2] Plaintiff suggests that the court "failed to put that incident into context" because plaintiff was angry that the school wanted to send BEW home.

her conduct while overlooking defendant's. Plaintiff acknowledges that defendant took out a personal protective order against her husband, but seems to suggest that this should be held against defendant rather than her. Plaintiff does not acknowledge, however, that she sent disturbing, hateful messages to defendant's mother in which she described defendant as "a lying motherfucker," baselessly accused defendant of molesting BEW, and threatened to use the legal system to completely deprive defendant of all access to the children. The court did not err by finding that these facts outweighed plaintiff's complaints that defendant did not always notify her about BEW's medical appointments. Finally, MCL 722.23 requires the court to base its best-interest findings on "the sum total" of the factors. In addition to the factors already discussed, the court found that factors (b), (f), (h), and (k) favored plaintiff, but defendant does not dispute the court's findings regarding any of these factors.

In sum, plaintiff has failed to establish that the trial court's best-interest findings were against the great weight of the evidence.

Affirmed. Defendant, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Allie Greenleaf Maldonado
/s/ Randy J. Wallace